# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | | Case No. 3:10CV0133 |
| vs. | : | |
| | | District Judge Timothy S. Black |
| ERMELO OCAMPO RIVERA, | : | Magistrate Judge Sharon L. Ovington |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

This matter is before the Court on Plaintiff United States of America's ["the United States"] motion for summary judgment or in the alternative for judgment of default (Doc. #22), and on the record as a whole.

<u>Findings of Fact</u>

1. On March 20, 1990, Defendant Ermelo Ocampo Rivera, a native of the Philippines, was admitted to the United States for permanent residency, based on his marriage to a United States citizen. (Doc. #22, Exh. 5).

2. On July 22, 1991, Rivera was arrested in Indiana for criminal

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

recklessness and battery. Those charges later were dismissed. (Doc. #22, Exh. 2).

3. On January 17, 1995, Rivera filed an Application for Naturalization ["Form N-400"] with the Indianapolis District Office of the Immigration and Naturalization Service ["INS"].[2] (Doc. #22, Exh. 5). Questions 15(a) and (b) on that form asked whether Rivera had ever (a) "knowingly committed a crime for which [he] ha[d] not been arrested?" and (b) "been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations?" (*Id.*). Rivera answered "No" to both questions. (*Id.*).

4. On March 29, 1995, an INS officer interviewed Rivera under oath about his Form N-400 answers. (*See* Doc. #22, Exh. 1). During that interview, Rivera swore under oath that the contents of his Form N-400 were true. (Doc. #2, Exh. 5 at 5).

5. In light of his July 1991 arrest for criminal recklessness and battery, both Rivera's answer to Question 15(b) on his Form N-400 and his reaffirmation under oath of that answer were false.

6. On March 31, 1995, the INS mailed Rivera a request for supplemental information, based on the INS's receipt of a Federal Bureau of Investigation

---

[2]The functions formerly performed by the INS relevant to this action have since been assumed by the Department of Homeland Security. (*See* Doc. #1 at ¶8).

report divulging Rivera's July 1991 arrest for criminal recklessness and battery. (Doc. #22, Exh. 6).  Rivera was asked, *inter alia*, to "explain in full why you did not reveal this information on your naturalization application and during the March 29th interview under oath."  (*Id.*).

7.  On April 10, 1995, Rivera responded to the INS's request with a letter "acknowledging [his] mistake" in omitting the charges in question, explaining that the charges had been dismissed with prejudice, and asserting that he "totally forgot all about it."  (Doc. #22, Exh. 7).

8.  On April 7, 1995 – three days before sending the letter explaining his failure to disclose the 1991 arrest – Rivera was arrested for the July 1994 sexual molestation of his live-in girlfriend's eight-year-old daughter.  (Doc. #22, Exh. 4). During the videotaped police interview that led to his arrest, Rivera reportedly confessed to sexually molesting the girl and said that he "would like to get help." (*See id.*).

9.  In light of Rivera's confessed commission of the sexual molestation offense in July 1994, both Rivera's January 1995 answer to Question 15(a) on his Form N-400 – denying that he had "knowingly committed a crime for which [he] ha[d] not been arrested" – and his reaffirmation under oath of that answer were false.  (*See* Doc. #22, Exh. 5).

10.  Rivera's April 10 letter to INS made no mention of his recent arrest. (*See* Doc. #22, Exh. 7).

11.  After receiving Rivera's explanation of his July 1991 arrest, the INS mailed Rivera a Notice of Naturalization Oath Ceremony ["Form N-445"], requesting that Rivera appear on May 23, 1995, to take the Oath of Allegiance. (Doc. #22, Exh. 8).  Form N-445 also included a questionnaire that Rivera was instructed to complete and bring with him to the oath ceremony.  (*See id.* at 2). Question 3 on Form N-445 asked Rivera, *inter alia*, if AFTER the date of his N-400 interview he had "<u>been</u> <u>arrested</u>, cited, charged, indicted, convicted, fined, or imprisoned for breaking for violating any law or ordinance, including traffic violations?"  (*Id.*) (emphasis added).  In response to that question, Rivera checked the box marked "No."  Rivera also signed a certification that the answers he provided were true and correct.  (*Id.*).

12.  In light of his April 7, 1995 arrest for sexual molestation, both Rivera's answer to Question 3 and his certification of that answer on his Form N-445 were false.

13.  On May 23, 1995, Rivera appeared for the Naturalization Oath Ceremony, where he presented his completed Form N-445.  (Doc. #22, Exh. 8). Based in part on Rivera's responses on Forms N-400 and N-445, Rivera was

permitted to take the Oath of Allegiance and was admitted to United States citizenship on that date, with the United States District Court for the Southern District of Indiana issuing Rivera Certificate of Naturalization No. 20874619. (Doc. #22, Exh. 9).

14.  On May 8, 1996, Defendant Rivera, represented by counsel, pled guilty to Child Molesting, a class C felony in violation of Indiana Penal Code § 35-42-4-3, as a result of the incidents that occurred in July 1994.  (*See* Doc. #22, Exh. 3).  On June 13, 1996, Rivera was sentenced to fours years in prison, of which two years were suspended, and also was placed on supervised probation for eight years.  (Doc. #22, Exh. 10).  Rivera also was ordered "to have no contact with children under 16 years of age, except his own natural children."[3]  (*Id.*).

15.  Although Rivera became naturalized before he was convicted of child molestation, he committed, was arrested for, and was charged with that crime prior to becoming a United States citizen.

16.  Rivera concealed his child molestation criminal act, arrest and criminal charge throughout the naturalization process.

17.  In or around December 1999, Rivera again was charged with sexually molesting an eight-year-old girl, this time a different child who was a neighbor in

---

[3]Even contact with his own children was to be "at all times supervised."  (Doc. #22, Exh. 10 at 1).

his building.  (Doc. #22, Exh. 13).  At that time, Rivera was still on probation for his 1996 conviction, the terms of which prohibited him from having any contact with children under the age of 16.[4]  (Doc. #22, Exh. 10).

18.  On April 8, 2010, the United States filed a complaint pursuant to 8 U.S.C. § 1451(a), seeking to revoke and set aside the order admitting Rivera to citizenship and to cancel Rivera's Certificate of Naturalization, based on Rivera's purported ineligibility to be naturalized due to his July 1994 sexual molestation crime and his concealment of that crime from the United States during the naturalization process.  (Doc. #1).  The complaint alleges that Rivera's last known place of residence is in Huber Heights, Ohio, within this judicial district.  (*Id.* at ¶4; *see also* Doc. #12).

19.  On April 13, 2010, Defendant Rivera was served personally with copies of the summons and complaint.  (Doc. #6).

20.  On June 17, 2010, the Court received a letter from a woman identifying herself as both Rivera's fiancée and the mother of the victim involved in Rivera's 1996 conviction.  (Doc.# 15).  The woman indicated that she was responding on Defendant Rivera's behalf because he was "being treated in the phillipines [sic] for his [elevated blood] sugar and glaucoma" following a trip there to visit his

---

[4]*See* n.3, *supra.*

ailing mother.  (*Id.*).  She also advanced arguments as to why she purports to believe that Defendant is not guilty of the crime for which he was convicted in 1996.  (*Id.*).  The same woman subsequently sent another letter to the Court, reiterating essentially the same arguments.  (Doc. #19).

21.  On July 23, 2010, the United States filed a status report to inform the Court that Defendant Rivera had "contacted Plaintiff's counsel via fax and asked for an extension to file his response . . . because he was getting medical treatment in the Phillippines and . . . needed more time to find a lawyer."  (Doc. #16 at 2).  The United States further advised that its counsel had "agreed to give Defendant until July 30, 2010, to respond to the Complaint."  (*Id.*).

22. On July 29, 2010,[5] the Court received a letter from Defendant Rivera confirming that he had requested and the United States had granted him "up to July 30, 2010 to file my response with your court."  (Doc. #17).

23.  Despite that extension, Rivera has not answered the complaint or otherwise appeared in this action.

24.  On November 3, 2010, following a motion by the United States (Doc. #20), the Clerk of Courts entered default judgment against Defendant Rivera.

---

[5]The letter is dated "June 21, 2010," and indicates that it was mailed from "San Jose City, Nueva Ecua, Philippines."

(Doc. #21).

Applicable Law

*Title 8 and Denaturalization*

Because "the right to acquire American citizenship is a precious one," *Fedorenko v. United States*, 449 U.S. 490, 505 (1981), the United States "carries a heavy burden of proof in proceeding to divest a naturalized citizen of his citizenship." *Costello v. United States*, 365 U.S. 165, 269 (1961). Nevertheless, "[n]o alien has the slightest right to naturalization unless all statutory requirements are complied with, and every certificate of citizenship must be treated as granted upon condition that the government may challenge it . . . and demand its cancellation unless issued in accordance with such requirements." *United States v. Ginsberg*, 243 U.S. 472, 474-75 (1917) (cited with approval in *Fedorenko*, 449 U.S. at 506). "Failure to comply with any of these conditions renders the certificate of citizenship 'illegal procured,' and naturalization that is unlawfully procured can be set aside." *Fedorenko*, 449 U.S. at 506 (citing 8 U.S.C. § 1451(a), *et al.*).

A civil action seeking denaturalization is the proper means for revoking the citizenship of a naturalized citizen. *See United States v. Stelmokas*, 100 F.3d 302, 311 (3d Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997). "[U]pon affidavit showing good cause therefor," the United States Code imposes on United States

attorneys a "duty" to institute proceedings to revoke and set aside the order admitting a person to citizenship, and to cancel such person's certificate of naturalization, if "such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a).

8 U.S.C. § 1427(a)(3) provides that no person shall be naturalized unless during the five years preceding his application for naturalization and through the date that he takes the oath of allegiance and becomes a citizen, such person "has been and still is a person of good moral character . . ." Additionally, in accordance with 8 U.S.C. § 1101(f)(3),

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was– . . . a member of one or more of the classes of persons . . . described in . . . subparagraphs (A) and (B) of section 212(a)(2) [8 U.S.C. § 1182(a)(2)].

Among the persons described in Section 1182(a)(2) are aliens who have been convicted of or have committed "acts which constitute the essential elements of. . . a crime involving moral turpitude . . ." 8 U.S.C. § 1182(a)(2)(i)(I).

A party alleged to have procured naturalization improperly is to be given 60 days' personal notice to answer the United States' denaturalization petition. 8

U.S.C. § 1451(b).

*Default Judgment Standard*

A court may grant a motion for default judgment "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(b)(2).  Notice to the defaulting party is not required when the defaulting party has not appeared personally or by a representative.  *Id.* The court may conduct a hearing "when, to enter or effectuate judgement, it needs to . . . establish the truth of any allegation by evidence, or investigate any other matter." *Id.*

When a defendant fails to defend an action to revoke his naturalized citizenship, "the Government is still held to a heavy burden, but the burden becomes all but academic since the defendant is considered to have admitted the factual averments of the complaint."  *United States v. Gorshkow*, No. 5:02-cv-186/LAC, 2002 WL 34543318, at *4 n.4 (N.D. Fla. 2002) (citing *Ackerman v. United States*, 178 F.2d 983, 984-85 (5th Cir. 1950)).

*Summary Judgment Standard*

A moving party is entitled to summary judgment in its favor if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247 (1986).  To determine if a genuine issue of material fact exists, the Court accepts the nonmoving party's evidence as true and draws all reasonable inferences in the nonmoving party's favor.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000); *see also Holiday v. City of Chattanooga*, 206 F.3d 637, 642 (6th Cir. 2000).  The Court's function is not to weigh the evidence to determine the truth of the matters asserted but to determine if there is a genuine issue of material fact for trial.  *Anderson*, 477 U.S. at 249.

"The burden placed upon the movant for summary judgment is to show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden at trial."  *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992); *see Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).  If the movant makes this showing, the nonmoving party must present affirmative or "significant probative evidence" in support of his or her claims.  *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002), *cert. denied*, 537 U.S. 1168 (2003); *see Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).   Such affirmative evidence must consist of "more than a scintilla of evidence" and

accomplish more than creating "some metaphysical doubt" about a factual issue. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 2989) (and cases cited therein).  The purpose driving this requirement is that summary judgment is designed to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Lenz v. Erdmann Corp.*, 773 F.2d 62, 66 (6th Cir. 1985) (citation omitted); *see Matsushita Elec.*, 475 U.S. at 587.

The Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Guarino,* 980 F.2d at 404; *see InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th  Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990); *see also Street*, 886 F.2d at 1479-80.  Rather, the burden falls squarely on the nonmoving party to designate specific facts or evidence in dispute.  *See Anderson*, 477 U.S. at 250; *see also Adams*, 31 F.3d at 379; *Guarino*, 980 F.2d at 404-05; *Street*, 886 F.2d at 1479-80.  If the party opposing summary judgment fails to present such affirmative evidence, there is no need for a trial since there are no "genuine factual issues that properly can be resolved only by a finder of fact . . ."  *Anderson*, 477 U.S. at 247-48; *see also Celotex*, 477 U.S. at 322-23; *Guarino*, 980 F.2d at 403.

Ultimately, the Court must determine at the summary-judgment stage whether the evidence presents a sufficient disagreement to require submission of the challenged claim or claims to a jury or whether the evidence is so one-sided

that the moving party must prevail as a matter of law.  *Anderson*, 477 U.S. at 251-

52; *see Little Caesar Enters.*, 219 F.3d at 551.

Rule 56(c) limits the materials to be considered on a motion for summary

judgment to "the pleadings, the discovery and disclosure materials on file, and

any affidavits" that show that there is no genuine issue requiring trial.  Affidavits

supporting or opposing such a motion

> must be made on personal knowledge, set out facts that
> would be admissible in evidence, and show that the
> affiant is competent to testify on the matters stated.  If a
> paper or part of a paper is referred to in an affidavit, a
> sworn or certified copy must be attached to or served
> with the affidavit.  The court may permit an affidavit to
> be supplemented or opposed by depositions, answers to
> interrogatories, or additional affidavits.

Fed. R. Civ. P. 56(e)(1).  In discharging its obligation to present affirmative

evidence in response to a properly-supported summary judgment motion, the

party opposing judgment also must respond "by affidavits or as otherwise

provided in this rule."  Fed. R. Civ. P. 56(e)(2).

"While pro se litigants are afforded significant leeway . . . , those who

proceed without counsel must still comply with the procedural rules that govern

civil cases."  *Frame v. Superior Fireplace*, 74 F. App'x 601, 603 (6th Cir. 2003) (citing

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), *McNeil v. United States,* 508 U.S. 106, 113

(1993)); *see also Moore v. Holbrook*, 2 F.3d 697, 702 (6th Cir. 1993) (Batchelder, J.,

dissenting) (*pro se* status "does not exempt [a plaintiff] from the requirements

that he properly plead his case, make out an actionable cause, and show that if he

proved all he claims, he would prevail at trial") (citing *Hughes v. Rowe,* 449 U.S. 5,

10 (1980)).

<u>Analysis</u>

    *<u>"Good Moral Character" Requirement</u>*

    The United States first argues that Rivera, as a confessed child molester,

was ineligible for naturalization because he was incapable of demonstrating that

he possessed the requisite good moral character.  (Doc. #22 at 6).  According to 8

U.S.C. § 1101(f)(3), one who admits to a crime involving moral turpitude is

precluded from being regarded as a person of  good moral character, and thus is

not eligible for naturalization.  Moreover, sex-related crimes against a protected

class member such as a minor child have been recognized to be crimes of moral

turpitude.  *See, e.g., Nunez v. Holder*, 594 F.3d 1124, 1132 (9th Cir. 2010); *Mehboob v.*

*Attorney Gen.*, 549 F.3d 272, 277 (3d Cir. 2008); *Castle v. Immigration &*

*Naturalization Serv.*, 541 F.2d 1064, 1066 (4th Cir. 1976); *Marciano v. Immigration &*

*Naturalization Serv.*, 450 F.2d 1022, 1025 (8th  Cir. 1971), *cert. denied*, 405 U.S. 997

(1972); *Marinelli v. Ryan*, 285 F.2d 474, 475-76 (2d Cir. 1961); *United States v. Okeke*,

671 F. Supp. 2d 744, 749 (D. Md. 2009) ("Acts of improper sexual conduct between an adult male offender and a child have generally been held to be crimes involving moral turpitude."); *United States v. Reve*, 241 F. Supp. 2d 470, 476 (D. N.J. 2003); and *Toutounjian v. Immigration & Naturalization Serv.*, 959 F. Supp. 598, 603 (W.D.N.Y. 1997) ("sexual or physical abuse of . . . children has been almost uniformly found to involve a crime of moral turpitude.").

In light of Defendant Rivera's failure to respond, the only arguments offered in opposition to the United States' position appear in the letters submitted by the woman identified as Defendant Rivera's fiancée and the mother of his victim. (*See* Doc. ##15, 19). The Court first acknowledges such individual's dubious legal standing to contest this matter on Rivera's behalf, and also notes that the factual contentions set forth in her letters are not presented in a form acceptable for purposes of opposing a motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(2). Those deficiencies aside, the doctrine of collateral estoppel presumably would prevent even Rivera himself from attacking his 1996 conviction in this action. *See McKinley v. City of Mansfield,* 404 F.3d 418, 428 (6th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006) ("As a general rule, a federal civil action . . . is not a venue for re-litigating issues that were decided in a prior state criminal case."); *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) ("A state court

judgment must be given the same preclusive effect in federal court that it would be given in the courts of the rendering state.") (citing, *inter alia, Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984)); *see also Hastings v. Hubbard*, No. 3:03CV131, 2006 WL 1705202, at *4 (S.D. Ohio June 16, 2006) (Ovington, M.J.) (no-contest plea precluded federal plaintiff from re-litigating facts underlying his conviction).

For all of these reasons, Defendant Rivera's 1996 guilty plea unquestionably establishes that he committed a crime involving moral turpitude during the relevant five year period before his naturalization application and through the date he took the oath of citizenship, *see* 8 U.S.C. § 1427(a)(3), and that he therefore was ineligible to become a naturalized citizen.

Even were that not true, however, when judged by the "standards of the average citizen in his community of residence," *see* 8 C.F.R. § 316.10(a)(2), Defendant Rivera still would fail to qualify as a person of good moral character for purposes of the "catch-all provision" contained at 8 U.S.C. § 1101(f).  The federal regulations implemented with respect to Section 1101(f) specifically provide that an applicant "shall be found to lack good moral character if" he has "[c]ommitted unlawful acts that adversely reflect upon [his] moral character" during the statutory period when good character must be established, even if his

-16-

unlawful acts do not align precisely with those categories explicitly set forth at Section 1101(f).  8 C.F.R. § 316.10(b)(3)(iii); *see also United States v. Dang*, 488 F.3d 1135, 1141 (9th Cir. 2007), *cert. denied*, 552 U.S. 1210 (2008); *United States v. Jean-Baptiste*, 395 F.3d 1190, 1191 (11th Cir.), *cert. denied*, 546 U.S. 852 (2005).  Pursuant to 8 C.F.R. § 316.10(a)(2), character determinations are to be made "on a case-by-case basis taking into account the elements enumerated in [8 C.F.R. § 316.10] and the standards of the average citizen in the community of residence."

The evidence of record in this case establishes that Rivera sexually molested an eight-year old girl on two occasions in or around July of 1994.  (*See* Doc. #22, Exh. 4).  Indeed, Rivera pled guilty to that crime.  (Doc. #22, Exh. 4). Considering Rivera's admitted crime against the standards of the average citizen in any community where Rivera may have resided, this Court does not hesitate to conclude as a matter of law that Rivera's criminal conduct reflects adversely on his moral character.[6]  *See* 8 C.F.R. § 316.10(b)(3)(iii); *see also, e.g., Castle*, 541 F.2d at 1066 (holding an adult male's sexual abuse of a 15-year-old girl to be "so basically offensive to American ethics and accepted moral standards as to constitute moral turpitude per se.").  Because Rivera's actions preclude him from meeting the

---

[6]The Court also agrees that no extenuating circumstances have been shown that would mitigate the effect of Rivera's criminal conduct on his ability to establish good moral character. (*See* Doc. #22 at 8); *see* 8 C.F.R. § 316.10(b)(3)(iii).

statutory good moral character requirement, he was ineligible to naturalize, and thus procured his naturalization illegally.

Concealment/Wilful Misrepresentation

In addition to requiring that a person be of good moral character in order to be eligible for naturalization, the denaturalization statute also provides for the revocation of naturalized status that was "procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). Revocation is proper if four requirements are met: (1) the naturalized citizen misrepresented or concealed some fact; (2) the misrepresentation or concealment was willful; (3) the misrepresented or concealed fact was material; and (4) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *See Kungys v. United States*, 485 U.S. 759, 767 (1988) (citing *Fedorenko*, 449 U.S. at 507 n.28). Misrepresentation or concealment shall be deemed material if it "was predictably capable of affecting, *i.e.*, had a natural tendency to affect, the official decision" as to whether the applicant meets the requirements for citizenship. *Id*. at 771.

The documentary evidence submitted in conjunction with the United States' motion amply demonstrates that Rivera procured his naturalization by willfully misrepresenting and concealing his criminal past throughout the

naturalization process.  First, Rivera was untruthful when he answered

"No" to Question 15(a) on Part 7 of his naturalization application.  (Doc. #22,

Exh. 5).  Rivera also concealed the truth by failing to disclose his criminal acts

when he claimed in writing (on his Form N-445) that he never had committed a

crime.  (Doc. #22, Exh. 8).

There can be little doubt that such misrepresentations and/or omissions

were "willful."  Willfulness is an objective standard that does not require an

intent to deceive.  *Parlak v. Holder*, 578 F.3d 457, 463 (6th Cir. 2009), *cert. denied*, ___

U.S. ___, 130 S. Ct. 3445 (2010); *see also Witter v. Immigration & Naturalization*

*Serv.*, 113 F.3d 549, 554 (5th Cir. 1997), *cert. denied*, 528 U.S. 1075 (2000).  The

United States "need show only that the misrepresentation was deliberate and

voluntary."  *Parlak*, 578 F.3d at 463 (citing *Witter*, 113 F.3d at 554); *see also*

*Espinoza-Espinoza v. Immigration & Naturalization Serv.*, 554 F.2d 921, 925 (9th Cir.

1977).  Questions 15(a) and (b) on Rivera's naturalization application and

Question 3 on his Form N-445 regarding criminal activity were unambiguous.

Rivera signed both documents under oath, certifying that his answers were true

and correct.  *See generally United States v. Profaci*, 274 F.2d 289, 292 (2d Cir. 1960)

(acknowledging that "intent to falsify and deceive" may be inferred "from the

mere untruthful response to a question, the clarity of which leaves little or no

-19-

room for a reasonable explanation of misunderstanding"). During both his naturalization interview and the oath ceremony, Rivera knew that he had committed a serious crime for which he already had been arrested and charged, yet he successfully evaded every opportunity to disclose that information to the United States. Having thus willfully concealed and misrepresented his criminal history throughout the naturalization process, Defendant Rivera was ineligible to naturalize under 8 U.S.C. § 1451.

Conclusions of Law

1. During the time period for determining whether he was of "a person of good moral character" for purposes of acquiring United States citizenship, Defendant Ermelo Ocampo Rivera molested and admitted to molesting an eight-year-old child, a crime both involving moral turpitude and "adversely reflect[ing] [upon] his moral character" within the meaning of the applicable federal statutory provisions regarding naturalized citizenship. *See* Ind. Code § 35-42-4-3; *Nunez v. Holder*, 594 F.3d 1124, 1132 (9th Cir. 2010); *Mehboob v. Attorney Gen.*, 549 F.3d 272, 277 (3d Cir. 2008); *Castle v. Immigration & Naturalization Serv.*, 541 F.2d 1064, 1066 (4th Cir. 1976); *Marciano v. Immigration & Naturalization Serv.*, 450 F.2d 1022, 1025 (8th Cir. 1971), *cert. denied*, 405 U.S. 997 (1972); *Marinelli v. Ryan*, 285 F.2d 474, 475-76 (2d Cir. 1961); *United States v. Okeke*, 671 F. Supp. 2d

744, 749 (D. Md. 2009); *United States v. Reve*, 241 F. Supp. 2d 470, 476 (D. N.J.

2003); *Toutounjian v. Immigration & Naturalization Serv.*, 959 F. Supp. 598, 603

(W.D.N.Y. 1997); 8 U.S.C. § 1182(a)(2)(i)(I); 8 U.S.C. § 1427(a)(3).

2.  Because his child molesting crime made him unable as a matter of law

to establish that he was "a person of good moral character" for purposes of 8

U.S.C. § 1427(a)(3), Defendant Ermelo Ocampo Rivera was ineligible for and

illegally procured both the order admitting him to citizenship and his certificate

of naturalization.  *See* 8 U.S.C. § 1451(a).

3.  Because he knowingly withheld information about his child molesting

crime and/or affirmatively misrepresented his criminal history throughout the

naturalization process, Defendant Ermelo Ocampo Rivera procured both the

order admitting him to citizenship and his certificate of naturalization by

concealment of a material fact or by willful misrepresentation.  *See Kungys v.

United States*, 485 U.S. 759, 767 (1988); *Parlak v. Holder*, 578 F.3d 457, 463 (6th Cir.

2009), *cert. denied*, ___ U.S. ___. 130 S. Ct. 3445 (2010); *Witter v. Immigration &

Naturalization Serv.*, 113 F.3d 549, 554 (5th Cir. 1997), *cert. denied*, 528 U.S. 1075

(2000); *Espinoza-Espinoza v. Immigration & Naturalization Serv.*, 554 F.2d 921, 925

(9th Cir. 1977); *United States v. Profaci*, 274 F.2d 289, 292 (2d Cir. 1960); 8 U.S.C. §

1451(a).

4.  Plaintiff United States has established good cause for revoking and setting aside the order admitting Defendant Ermelo Ocampo Rivera to citizenship, and for canceling Defendant Ermelo Ocampo Rivera's certificate of naturalization.  *See* 8 U.S.C. § 1451(a).


**IT THEREFORE IS RECOMMENDED THAT**:

1.  The United States of America's motion for summary judgment or in the alternative for judgment of default (Doc. #22) be GRANTED, and that judgment be ENTERED in favor of the United States and against Defendant Ermelo Ocampo Rivera;

2.  The District Judge issue an Order providing that the order admitting Defendant Ermelo Ocampo Rivera to citizenship be REVOKED and SET ASIDE and/or that said Defendant's certificate of naturalization be CANCELED;

3.  The Clerk of Court be DIRECTED to transmit to the Attorney General a CERTIFIED COPY of any Order and Judgment issued by this Court in accordance with the foregoing Recommendations; and

4.  This case be TERMINATED on the docket of this Court.


March 2, 2011                                   ___s/Sharon L. Ovington____
                                                          Sharon L. Ovington
                                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981).